UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID BROWN, | ) | CASE NO. 4:11CV1084 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE GEORGE J. |
| | ) | LIMBERT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF | ) | MEMORANDUM OPINION AND |
| SOCIAL SECURITY, | ) | ORDER |
| | ) | |
| Defendant. | ) | |

David Brown ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the Court AFFIRMS the Commissioner's decision and dismisses Plaintiff's complaint with prejudice:

## I. PROCEDURAL AND FACTUAL HISTORY

On March 17, 2008[1], Plaintiff filed applications for DIB and SSI, alleging disability beginning September 6, 2007. ECF Dkt. #11 at 190-196.[2] Plaintiff's date last insured was December 31, 2008. *Id.* at 61. The SSA denied Plaintiff's applications initially, ECF Dkt. #11 at 150-151, and on reconsideration. *Id.* at 152-153.

On November 19, 2008, Plaintiff filed a request for an administrative hearing and indicated that he would not be represented by counsel. *Id.* at 166-167. On December 18, 2009, an ALJ conducted an administrative hearing where Plaintiff was not represented by counsel. *Id.* at 77-149. At the hearing, the ALJ heard testimony from Plaintiff and Larry Ostrowski, Ph.D, a vocational

---

[1]Plaintiff file two prior applications for SSI and DIB, which are not at issue in this appeal. See ECF Dkt. #11 at 65.

[2]Page numbers refer to "Page ID" numbers in the electronic filing system.

expert ("VE"). *Id.* On February 16, 2010, the ALJ issued a Decision ("Decision") denying benefits. *Id.* at 59-76. Plaintiff filed a request for review, *Id.* at 160, which the Appeals Council denied. *Id*. at 47-49.

On May 26, 2011, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On December 13, 2011, Plaintiff filed a brief on the merits. ECF Dkt. #13. On January 27, 2012, Defendant filed a brief on the merits. ECF Dkt. #16. No reply brief was filed.

**II**.    **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffered from prescribed narcotic dependence, a history of low back surgery, lumbar and thoracic disc disease degenerative disc disease, a history of partial thoracic tear in 2008 and 2004 surgery, chronic stable hypoxemia, a history of spina bifida, and status post surgery for sleep apnea in 2002, which qualified as severe impairments under 20 C.F.R. §404.1520(c) and 416.920(c). ECF Dkt. #11 at 61-62. The ALJ also determined that Plaintiff suffered from two non-severe impairments, old wedge compression at T11 and a history of depression.[3] The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404-1525, 404.1526, 416.920(d), 416.925 and 416.926. ("Listings"). *Id*. at 63. The ALJ ultimately determined that Plaintiff has the residual functional capacity ("RFC") to perform medium work as defined by 20 C.F.R. 404.1567(c) and 416.967(c), with no more than occasional climbing of ladders, ropes, or scaffolds and stooping, with avoidance of concentrated exposure to poor ventilation and environmental irritants such as fumes, dusts, odors and gases. *Id.* at 64. The VE testified that a claimant with Plaintiff's RFC could not perform his previous work as a carpenter, but was capable of performing the occupations of kitchen helper, commercial cleaner, and hand packager. *Id.* at 80. Based upon Plaintiff's RFC, his age, education, and work experience, the ALJ determined that Plaintiff had not been under a disability as defined in the SSA and was therefore not entitled to benefits.

---

[3]Plaintiff does not appeal the ALJ's findings with respect to Plaintiff's sleep apnea or his non-severe mental impairment.

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long

as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V.    ANALYSIS

Plaintiff asserts three arguments in this appeal. First, Plaintiff contends that the ALJ erred when he concluded that Plaintiff suffers from prescribed narcotic dependence. Next Plaintiff argues that the ALJ improperly evaluated Plaintiff's complaints of debilitating pain. Finally, Plaintiff asserts that the ALJ did not conduct a fair, non-adversarial hearing, which was required due to Plaintiff's *pro se* status at the hearing.

Plaintiff provided the following testimony at the hearing. Plaintiff underwent back surgery[4] in 2004, and was only able to perform part-time carpentry work after the surgery. His back pain worsened until he could no longer lift tools and he began suffering back spasms. ECF Dkt. #11 at 91. At that time, he did some general contracting, but found that, in time, he was unable to walk around a job site. *Id.* at 94. He considered becoming a real estate agent, but realized it would be impossible since he lays on the couch eighty percent of the day. *Id.* at 95.

Plaintiff testified that he sees Matthew Inman, D.O. once a month to refill his Oxycontin prescription. *Id.* at 95, 128. Plaintiff testified that "there's been times when [he] did not have the pain medication and [he could] not get out of bed without it." *Id.* at 128. Plaintiff testified that he had only been taking narcotic pain medication for the last two years and has made no effort to wean himself off the medication with the assistance of a pain management clinic. *Id.* at 129. The physician that performed his back surgery cautioned him against chiropractic treatment. However,

---

[4]The discharge summary from Piedmont Hospital, dated March 20, 2004, indicates a primary diagnosis of spondylolisthesis L5/S1 (756.12), lists the reason for admission as "surgical treatment of lumbar radicular pain," and describes the surgery as "Laminectomy L5, posterior lumbar interbody fusion L5-1, Post-lat fuse L5-S1, synergy Tibrium fixation, L iliac graft. ECF Dkt. 11 at 268.

Plaintiff testified that he has tried acupuncture, physical therapy, and water therapy in the past. *Id.* at 96. He stated that he has tried "other types of things" but they don't work. *Id.*

Plaintiff lives in a 1000-square foot cabin built on his mother's 100-acre farm in Northeast Ohio. He received state assistance, that is, $200.00 in food stamps and $115.00 from the Ohio Department of Job and Family Services. *Id.* at 116-117. A typical day starts at 8:30 a.m. when Plaintiff goes to his mother's house (approximately four minutes by automobile from his cabin) for breakfast. *Id.* at 123. Plaintiff's sister, brother, and nephew live with his mother on the farm. *Id.* at 126. After an hour or so, he returns to the cabin and reads and watches television until lunchtime. *Id.* at 120. He fixes a sandwich for himself for lunch then spends the afternoon on the couch reading and watching television. Plaintiff has to stretch out flat or in a long position in order to alleviate his back pain. Plaintiff uses oxygen when he sleeps to treat his sleep apnea, however he does not use oxygen during his afternoon naps. *Id.* at 121-122.

In his first argument, Plaintiff contends that the ALJ erred in concluding that he suffers from prescribed narcotic dependence. Plaintiff conceded a prescribed narcotic dependence at the hearing when he testified that "there's been times when [he] did not have the pain medication and [he could] not get out of bed without it." *Id.* at 128. Furthermore, in an internal medicine evaluation conducted by William D. Padamadan, M.D. for the Disability Determination Service on May 22, 2007, Plaintiff told Dr. Padamadan that his family doctor (presumably Dr. Inman) had been treating Plaintiff's back pain with Percocet and Oxycontin, and that he had been on Vicodin since his surgery[5] in 2004. *Id.* at 258. Consequently, Plaintiff's testimony at the hearing that he began taking narcotic pain medication two years prior to the hearing is contradicted by the information he provided to Dr. Padamadan in 2007. Dr. Padamadan diagnosed "narcotic dependence from 2004" and further observed that Plaintiff "had no clinical indications of intensity of pain requiring Oxycontin and Percocet on general appearance." *Id.* Consequently, there was substantial evidence in the record, including Plaintiff's own admission at the hearing, that he suffered from prescribed

---

[5] The discharge instructions following Plaintiff's 2004 back surgery specifically instruct him to "wean from Vicodin." *Id.* at 268.

narcotic dependence. As a consequence, his first argument in this appeal has no merit.

Next, Plaintiff contends that the ALJ did not properly evaluate Plaintiff's complaints of debilitating pain. The social security regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 416.929. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.; Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

Plaintiff's testimony regarding his allegedly debilitating pain is not supported by the medical records in this case. For instance, Dr. Padamadan, in his May 22, 2007 report, did not see "any indication for limitation of physical activities, except for heavy lifting over fifty pounds on a frequent basis." *Id.* at 260. Nick Albert, M.D., a Disability Determination Service physician, reached the same conclusion regarding Plaintiff's physical limitations. *Id.* at 280. Dr. Albert observed that "[o]n clinical exam there are no significant abnormalities, No muscle spasms, [Plaintiff's] muscle stretch reflexes of the lower extremities for L4 and S1 were normal." *Id.* at 275.

On April 18, 2008, Dr. Inman completed a questionnaire for the Bureau of Disability Determination. Dr. Inman reported that Plaintiff suffered chronic low back pain and muscle spasms following back surgery in 2004. At the time, Dr. Inman prescribed Oxycontin (80 mg/three times per day), Ibuprofen (three times per day), and Percocet (four times per day for break through pain). Dr. Inman characterized the foregoing treatment as "conservative medical management" and

-6-

reported adequate pain control. Although Dr. Inman opined that Plaintiff could not be actively employed, he then observed that Plaintiff could be retrained. *Id.* at 267. Dr. Inman completed a second questionnaire on August 6, 2008. He reported pain in Plaintiff's knees in addition to muscle spasms and back pain. *Id.* at 391. Therefore, Plaintiff's treating physician does not conclude that Plaintiff's pain is so severe that he can no longer perform full time work.

Two functional capacity evaluations were conducted by physical therapists. Brian E. Walker, DPT, noted that Plaintiff had not undertaken any physical rehabilitation following his 2004 surgery, and relied instead on narcotic pain medication. Walker attributed Plaintiff's ambulation, which was slow but functional, on his "overall physical condition and his lack of endurance." *Id.* at 273. Walker further observed that Plaintiff completed the functional capacity evaluation in no apparent distress, despite Plaintiff's claim that his pain was 6.5/10. As a matter of fact, Plaintiff remarked that the pain was "no different than any other physical day in his life." *Id.*

Annette Demos, PT, conducted a second functional capacity evaluation on June 29, 2009. Demos observed that Plaintiff was in constant pain and could not consistently sit or stand, but ultimately limited him to sedentary work, defined as ten pound maximum lifting and or carrying, and walking/standing on occasion. *Id.* at 353-354. The ALJ did not give any weight to Demos' conclusions due to the fact that they were predicated upon Plaintiff's subjective complaints rather than any objective evidence of pain. *Id.* at 69-70. For instance, Demos concluded that Plaintiff was unable to bend, but Plaintiff included picking up sticks around the cabin as one of his tasks at the farm, and conceded that he gets in and out of his truck at least four times a day. *Id.* at 70. It is important to note that Demos does not conclude that Plaintiff's limitations are so severe that he is ultimately unable to perform any type of work.

The results of two magnetic resonance imaging tests (MRIs) are included in the record. The MRI dated January 24, 2008 indicates "some wedge deformity to T11, which appears to be remote," and "degenerative change in the lower thoracic spine." *Id.* at 345. The MRI dated November 21, 2008 indicates degenerative changes at T11-T12, L4-L5 and L5-S1, with the most sever finding being foraminal narrowing seen bilaterally at L5-S1. *Id.* at 344. Consequently, there is no medical evidence supporting Plaintiff's claim of debilitating pain.

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40. Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination. *See Casey*, 987 F.2d at 1234. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

The ALJ found that Plaintiff's medical condition could be expected to produce pain, but not the kind of severe pain that Plaintiff alleged. It should be noted that the ALJ did not totally reject Plaintiff's allegations of pain, but rather, he determined that Plaintiff's allegations of the intensity, duration and limiting effects of his symptoms were not substantiated by the objective medical findings or other evidence in the record. An ALJ is not required to accept a plaintiff's own testimony regarding his pain. *See Gooch v. Secretary of Health and Human Servs.,* 833 F.2d 589, 592 (6th Cir. 1987). Here, the ALJ concluded that Plaintiff was over-medicated, based largely on Plaintiff's refusal to consider any alternative pain management, as well as his failure to undertake any kind of physical therapy following his 2004 surgery. He also cited inconsistencies in Plaintiff's testimony regarding his inability to function. Accordingly, Plaintiff's argument that the ALJ did not properly evaluate his pain is not well taken.

In his final argument, Plaintiff asserts that the ALJ failed to fairly and fully develop the evidence on behalf of an unrepresented claimant. "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110–11, 120 S.Ct. 2080, 147

L.Ed.2d 80 (2000). "The ALJ has a 'special duty' to develop the administrative record and ensure a fair hearing for claimants that are unrepresented by counsel." *Lipsey v. Comm'r of Soc. Sec.*, No. 2011 WL 761484 at *5 (W.D.Mich. Jan.24, 2011) (citing *Duncan v. Sec'y of H.H.S.*, 801 F.2d 847, 856 (6th Cir.1986); *Lashley v. Sec'y of HHS*, 708 F.2d 1048, 1051-52 (6th Cir.1983). However, the fact that Plaintiff appeared at the hearing without counsel is not alone cause for error. See *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir.1986). The determination of whether the ALJ has failed to fully develop the record is made on a case-by-case basis by examining the record. *Lashley* at 1052 ("There is no bright line test for determining when the administrative law judge ... failed to fully develop the record."). As long as there is sufficient evidence in the record for him to make a decision regarding the claimant's disability, it is within the discretion of an ALJ to close the record. See *Dotson v. Dotson Coal Co.*, No. 89–3157, 1990 WL 4056, at *1 (6th Cir. Jan. 23, 1990).

Plaintiff contends that the ALJ in this case was not impartial, because he accused Plaintiff of prescribed narcotic dependence and criticized Plaintiff's decision to forego alternative treatment for his pain and to rely exclusively on narcotic pain medication. Having reviewed the transcript, there is no indication that the ALJ failed to fully and fairly develop the record. The hearing was approximately one and one half hours in length, and the ALJ gave Plaintiff several opportunities to describe the level of pain he suffers on a daily basis. Moreover, the discussions regarding Plaintiff's use of narcotics and his refusal to consider alternative pain treatment were relevant to the disability determination. Although Plaintiff cites several passages in the transcript that allegedly demonstrate a lack of courtesy on the part of the ALJ, reading the passages in context revealed no such discourtesy. Accordingly, Plaintiff's final argument does not have merit.

For the foregoing reasons, the undersigned AFFIRMS the Commissioner's decision and dismisses Plaintiff's complaint with prejudice.

DATE: May 23, 2012

                                                     */s/George J. Limbert*
                                                   GEORGE J. LIMBERT
                                                   UNITED STATES MAGISTRATE JUDGE